UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HARLEYSVILLE WORCESTER<br>INSURANCE COMPANY, | :<br>:<br>: |
| Plaintiff | :<br>: |
| v. | :     Docket No.: 1:20-cv-00219-JJM-LDA |
| HIGH TECH CONSTRUCTION, INC.,<br>JOE M. DALOMBA, THE RIATA<br>REALTY IRREVOCABLE TRUST, THE<br>GREG MERCURIO, JR. 2010<br>REVOCABLE TRUST,<br>GREGORY MERCURIO, JR., AND<br>THE BAILEY GROUP, LLC | :<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants | : |

## **FIRST AMENDED COMPLAINT**

## **DECLARATORY JUDGMENT COMPLAINT**

Plaintiff, HARLEYSVILLE WORCESTER INSURANCE COMPANY ("Harleysville"),

for its Declaratory Judgment Complaint against defendants, HIGH TECH CONSTRUCTION,

INC., JOE M. DALOMBA, THE RIATA REALTY IRREVOCABLE TRUST, THE GREG

MERCURIO, JR. 2010 REVOCABLE TRUST, GREGORY MERURIO, JR., and THE BAILEY

GROUP, LLC alleges as follows:

<u>Nature of the Action</u>

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201, *et seq.*

2. Harleysville seeks a declaration as to its defense and indemnity obligations with

respect to the Underlying Suit.

3. Harleysville seeks a declaration that there is no defense or indemnity coverage as

to High Tech Construction, Inc. under Policy No. GL00000099708G issued to High Tech

Construction, Inc. and Joe M. Dalomba with effective dates of December 1, 2011 to December 1, 2012 (the "Policy"), in relation to the lawsuit captioned *David Bastien, Trustee of the Riata Realty Irrevocable Trust, and Gregory Mercurio, Jr., Trustee of the Greg Mercurio, Jr., 2010 Revocable Trust, and Gregory Mercurio, Jr. v. High Tech Construction of RI, Inc., High Tech Construction, Inc., The Bailey Group, LLC, Bridgeview Construction, Inc., Classic Plastering, LLC, Frank Vancore, and Joseph Dalomba*, Docket No. C.A. No. PC-2017-1812, pending in the Superior Court of Rhode Island, Providence (the "Underlying Suit").

Jurisdiction and Venue

4.      Harleysville is an insurance company organized under the laws of the State of Ohio. Harleysville is domiciled in the State of Ohio with its principal place of business in Columbus, Ohio.

5.      Upon information and belief, defendant, High Tech Construction, Inc., is organized under the laws of the State of Rhode Island with a business address of 888 Lonsdale Avenue, Central Falls, RI02863. Accordingly, this Court has personal jurisdiction over it.

6.      Upon information and belief, defendant, David Bastien, in his capacity as trustee of the Riata Trust, is a Rhode Island citizen with an address of 381 Metro Center Boulevard, Warwick, RI02886. Accordingly, this Court has personal jurisdiction over him.

7.      Upon information and belief, defendant, Gregory Mercurio, Jr., in his capacity as trustee of the Mercurio Trust, is a Rhode Island citizen with an address of 20 Riata Drive, Lincoln, Rhode Island 02865. Accordingly, this Court has personal jurisdiction over it.

8.      Upon information and belief, defendant, Gregory Mercurio, Jr. is a Rhode Island citizen with an address of 20 Riata Drive, Lincoln, Rhode Island 02865. Accordingly, this Court has personal jurisdiction over it.

2

9.     Upon information and belief, defendant, Joe M. Dalomba is a Rhode Island resident with an address of 888 Lonsdale Avenue, Central Falls, Rhode Island 02863. Accordingly, this Court has personal jurisdiction over him.

10.     Upon information and belief, defendant, The Bailey Group, LLC is organized under the laws of the State of Rhode Island with a business address of 615 Jefferson Boulevard, Suite 104, Warwick, RI, 02886. Each of its Members are residents of Rhode Island. Accordingly, this Court has personal jurisdiction over it.

11.     Upon information and belief, the amount in controversy exceeds $75,000.000, exclusive of interest and costs.

12.     Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a)(1) in that Harleysville and defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because all of the defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

The Policy

14.     Harleysville issued Policy No. GL00000099708G to High Tech Construction, Inc. and Joe M. Dalomba with effective dates of December 1, 2011 to December 1, 2012 (the "Policy"), A true and accurate copy of the Policy is appended hereto as *Exhibit A* and incorporated by reference in its entirety.

15.     Harleysville expressly reserves its right to rely on the Policy in its entirety in seeking declaratory judgment that there was/is no duty to defend and/or indemnify any insured in relation to the Underlying Suit. Harleysville further expressly reserved the right to modify and amend this Declaratory Judgment Complaint.

3

## The Underlying Suit

16.     On or about April 21, 2017, David Bastien, Trustee of the Riata Realty Irrevocable Trust, and Gregory Mercurio, Jr., Trustee of the Greg Mercurio, Jr., 2010 Revocable Trust, and Gregory Mercurio, Jr. (collectively referred to as "plaintiffs") instituted the Underlying Suit against High Tech Construction, Inc. and several other defendants in Rhode Island Superior Court, Judicial District of Providence.

17.     On or about July 17, 2017, plaintiffs filed an Amended Complaint, which is the operative Complaint in the Underlying Suit (the "Complaint"). A true and accurate copy of the Complaint is attached hereto as **_Exhibit B_** and incorporated by reference.

18.     The Underlying Suit arises out of demolition and construction work performed at 20 Riata Drive, Lincoln, Rhode Island 02865 (the "Property"). 19. On or about April 30, 2018, plaintiffs filed an Application for Entry of Default against High Tech Construction, Inc. in the Underlying Suit.

20.     High Tech Construction, Inc. was aware of the April 30, 2018 Application on or about April 30, 2018.

21.     Joe M. Dalomba was aware of the April 30, 2018 Application on or about April 30, 2018.

22.     Counsel for High Tech Construction, Inc. and/or Joe M. Dalomba was/were aware of the Application on or about April 30, 2018.

23.     Default was entered in the Underlying Suit against High Tech Construction, Inc. on or about May 3, 2018.

24.     High Tech Construction, Inc. was aware of the May 3, 2018 entry of Default against High Tech Construction, Inc. on or about May 3, 2018.

4

25.     Joe M. Dalomba was aware of the May 3, 2018 entry of Default against High Tech Construction, Inc. on or about May 3, 2018.

26.     Counsel for High Tech Construction, Inc. and/or Joe M. Dalomba was/were aware of the May 3, 2018 entry of Default against High Tech Construction, Inc. on or about May 3, 2018.

27.     High Tech Construction, Inc. first provided notice of any "occurrence", claim or "suit" on March 5, 2019.

28.     High Tech Construction, Inc. is represented by counsel in the Underlying Suit, which counsel was appointed by Harleysville. Such representation is provided to High Tech Construction, Inc. under a reservation of rights.

29.     On November 12, 2019, defense counsel assigned to High Tech Construction, Inc. by Harleysville under a reservation of rights filed a Motion to Vacate the Default.

30.     On January 9, 2020, the Court denied the Motion to Vacate the Default.

31.     One of the basis cited by the Court for its denial of the Motion to Vacate the Default was Attorney Comley's and Attorney Litwin's knowledge of the Application for Entry of Default, as well as the Order of Default entered on May 3, 2018 and the Court held that there was no basis to support the substantial delay to have the Default lifted.

32.     On or around March 5, 2021, Defendant, The Bailey Group, LLC, filed a Motion to Assert a Cross-Claim against High Tech Construction, Inc. asserting claims of indemnification and contribution (the "Cross-Claim").

<u>First Count – Declaratory Judgment –
No Duty To Defend</u>

33.     FFCIC incorporates paragraphs 1 – 32 as if fully set forth herein.

34.     The initial grant of liability coverage expressly and unambiguously provides, in relevant part, as follows:

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" or "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

                                    ***

35.     The Underlying Suit and the Cross-Claim fail to trigger coverage under the insuring agreement because neither alleges damages because of "bodily injury" or "property damage" as defined by the Policy.

36.     The Underlying Suit and the Cross-Claim fail to trigger coverage under the insuring agreement because any alleged damages because of "bodily injury" or "property damage" asserted in the Underlying Suit or the Cross-Claim were not caused by an "occurrence" as defined by the Policy.

37.     The Underlying Suit and the Cross-Claim fail to trigger coverage under the insuring agreement because neither alleges damages because of "bodily injury" or "property damage" caused by an "occurrence", which "bodily injury" or "property damage" occurred during the policy period.

38.     There is no coverage under the Policy for the Underlying Suit and/or the Cross-Claim because coverage is excluded pursuant to exclusions a., b., g., j.(4), j.(5), j.(6), k. l., m., n. and/or **EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)** Endorsement IL-7115, which expressly and unambiguously state, in relevant part:

**2.  Exclusions**

This insurance does not apply to:

**a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured" contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**g.  Aircraft, Auto Or Watercraft**

7

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

**j. Damage To Property**

"Property damage" to:

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement , adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS (EIFS)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of the manufacture, installation, application, use or sale of Exterior Insulation and Finish Systems (EIFS) or similar system, including any part, exterior component, fixture or feature of such a system.

39.    The Policy Conditions expressly and unambiguously provide, in relevant part, as follows:

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the instigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

40.     High Tech Construction, Inc. and Joe M. Dalomba breached Policy Condition 2 in that it/he/they failed to see to it that Harleysville was notified as soon as practicable of an "occurrence" that may result in a claim, to the extent one occurred, which Harleysville denies;

41.     High Tech Construction, Inc. and Joe M. Dalomba breached Policy Condition 2 in that it/he/they failed to notify Harleysville, in writing, as soon as practicable that a claim was made;

42.     High Tech Construction, Inc. and Joe M. Dalomba breached Policy Condition 2 in that it/he/they failed to notify Harleysville, in writing, as soon as practicable that a "suit" was brought;

43.     High Tech Construction, Inc. and Joe M. Dalomba breached Policy Condition 2 in that it/he/they failed to immediately send Harleysville copies of any demands, notices, summonses and/or legal papers received in connection with a claim and/or "suit";

44.    Harleysville is entitled to a declaration that it does not have a duty to defend High Tech Construction, Inc. with respect to the Underlying Suit and/or the Cross-Claim under the Policy.

<u>Second Count – Declaratory Judgment –<br>No Duty To Indemnify</u>

45.    Harleysville incorporates paragraphs 1 – 44 as if fully set forth herein.

46.    Harleysville is entitled to a declaration that it does not have a duty to indemnify High Tech Construction, Inc. with respect to the Underlying Suit and/or the Cross-Claims under the Policy.

[Intentionally Blank]

WHEREFORE, the plaintiff, Harleysville, respectfully requests a judgment against defendants as follows:

A. Declaring that Harleysville is not obligated to defend High Tech Construction, Inc. under the Policy as to the allegations in the Underlying Suit and/or the Cross-Claim;

B. Declaring that Harleysville is not obligated to indemnify High Tech Construction, Inc. under the Policy as to the allegations in the Underlying Suit and/or the Cross-Claim;

C. Awarding Harleysville its attorneys' fees and costs in this action; and

D. Awarding such other and further relief allowed by law and/or equity as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, Harleysville, hereby demands a jury trial.

Plaintiff,
**HARLEYSVILLE WORCESTER INSURANCE COMPANY**,
By Its Attorney:


*/s/ Casey L. McCaffrey*
Casey L. McCaffrey, Esq., #9337
cmccaffrey@hassettanddonnelly.com
Kelly E. Petter, Esq., *pro hac vice*
kpetter@hassettanddonnelly.com
Hassett & Donnelly, P.C.
446 Main Street - 12th Floor
Worcester, MA 01608
Tel: (508) 791-6287
Fax: (508) 791-2652


DATED: March 31, 2021

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31st day of March, 2021, a copy of foregoing document
was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice
of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing
system or by mail to anyone unable to accept electronic filing as indicated on the Notice of
Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Casey L. McCaffrey*
Casey L. McCaffrey, Esquire

# EXHIBIT A

GL00000099708G



Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

---

**Insured:** High Tech Construction Inc
**Agent:** DACEY INSURANCE AGENCY INC

**Policy Number:** GL00000099708G
**Policy Period:** 12/01/2011 to 12/01/2012
RENEWAL

---

# COMMERCIAL LINES COMMON POLICY DECLARATIONS

**Named Insured and Mailing Address:**

High Tech Construction Inc
and Joe M Dalomba
888 Lonsdale Ave
Central Falls, RI 02863-1617

**Agent:**

DACEY INSURANCE AGENCY INC
631 MAIN ST
EAST GREENWICH, RI 02818

**Agency Code:** 384055
**Phone Number:** (401)398-8020

**Policy Period:** 12/01/2011 to 12/01/2012

at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:**

General Contractor

**Form of Business:**

CORPORATION

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY. IF YOU REQUEST CANCELLATION OF THIS POLICY, THE COMPANY WILL RETAIN A MINIMUM PREMIUM OF $ 250

---

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| Coverage Part | Premium |
|---|---|
| Commercial Property Coverage Part | |
| Commercial General Liability Coverage Part | $ 12,622.00 |
| Crime and Fidelity Policy Coverage Part | |
| Commercial Inland Marine Coverage Part | |
| Commercial Auto Coverage Part | |
| Commercial Liability Umbrella Policy | |

| | | |
|---|---|---|
| Sub-Total | $ | 12,622.00 |
| Fees and Surcharge - See Schedule GU-7015 (If Applicable) | | |
| Total | $ | 12,622.00 |

**FORM (S) AND ENDORSEMENT (S) MADE A PART OF THIS POLICY:**
SEE SCHEDULES **GU-7004** and **GU-7009**

**GU-7000 (Ed. 4-09)**

Page: 1 of 1
Issued: 12/13/2011

GL00000099708G



**Harleysville**
*Good people to know*

Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

| | |
|---|---|
| **Insured:** High Tech Construction Inc | **Policy Number:** GL00000099708G |
| **Agent:** DACEY INSURANCE AGENCY INC | **Policy Period:** 12/01/2011 to 12/01/2012 RENEWAL |

# LOCATION SCHEDULE

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 001 | ALL | 888 Lonsdale Ave Central Falls, RI 02863-1617 |

GU-7005 (Ed. 4-09)

Page 1 of 1
Issued: 12/13/2011

GL00000099708G



**Harleysville**
*Good people to know*

Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

---

**Insured:** High Tech Construction Inc
**Agent:** DACEY INSURANCE AGENCY INC

**Policy Number:** GL00000099708G
**Policy Period:** 12/01/2011 to 12/01/2012
RENEWAL

---

# FORM SCHEDULE

ALL FORMS ARE ATTACHED. RETAIN UNLESS DELETED OR REPLACED.

| Form | Edition | Description |
|------|---------|-------------|
| | | POLICY FORMS |
| PJ0003 | 0809 | Policy Jacket- HWIC |
| GU7005 | 0409 | Location Schedule |
| IL0003 | 0908 | Calculation of Premium |
| IL0017 | 1198 | Common Policy Conditions |
| IL0021 | 0908 | Nuclear Energy Liability Exclusion Endorsement (Broad) |
| IL0128 | 0908 | Rhode Island Changes - Prejudgment Interest |
| IL0197 | 0908 | Rhode Island Changes |
| IL0273 | 0110 | Rhode Island Changes - Cancellation and Nonrenewal |
| IL0985 | 0108 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| | | LIABILITY FORMS |
| CG0001 | 1204 | Commercial General Liability Coverage Form |
| CG2010 | 0704 | Addl Ins - Owners, Lessees, or Contractors-Sched Pers |
| CG2011 | 0196 | Additional Insured-Managers or Lessors of Premises |
| CG2147 | 0798 | Employment-Related Practices Exclusion |
| CG2167 | 1204 | Fungi or Bacteria Exclusion |
| CG2170 | 0108 | Cap on Losses from Certified Acts of Terrorism |
| CG2176 | 0108 | Excl of Punitive Damages Certified Act of Terrorism |
| CG2426 | 0704 | Amendment of Insured Contract Definition |
| CG2674 | 0502 | Rhode Island Changes - Notice Of Cancellation |
| CG3203 | 1105 | Rhode Island Changes - Lead Poisoning |
| CG7105 | 1206 | Non-Pyramiding of Limits |
| CG7108 | 1201 | Exclusion - Asbestos, Silica, or Talc |
| CG7186 | 0904 | General Liability Enhancement Endorsement |
| CG7248 | 1204 | Excl-Unsolicited Faxes, Telephone Calls and Emails |
| IL7115 | 0600 | Excl-Exterior Insulation and Finish Systems (EIFS) |

---

**GU-7004 (Ed. 4-09)**

Page 1 of 1
Issued: 12/13/2011

GL00000099708G



**Harleysville**
*Good people to know*

Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

| | |
|---|---|
| **Insured:** High Tech Construction Inc | **Policy Number:** GL00000099708G |
| **Agent:** DACEY INSURANCE AGENCY INC | **Policy Period:** 12/01/2011 to 12/01/2012 |
| | RENEWAL |

# POLICYHOLDER NOTICE SCHEDULE

The following material contains important information about your policy. Please read it carefully.
ALL FORMS ARE ATTACHED. RETAIN UNLESS DELETED OR REPLACED.

| Form | Edition | Description |
|---|---|---|
| | | POLICY FORMS |
| GU1197 | 0706 | Harleysville Insurance Privacy Pledge |
| ST7115 | 1009 | Premium Audit Notice |
| ST7568 | 1007 | Subcontractor Management "Best Practices" |
| ST7592 | 1105 | Rhode Island Notice to Policyholders Lead Hazard |
| ST7613 | 1008 | Trans of Your Pol to Another Comp Within Harleysville |

**GU-7009 (Ed. 4-09)**

Page 1 of 1
Issued: 12/13/2011

GL00000099708G



## Harleysville
*Good people to know*

Harleysville Worcester Insurance Company
365 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

| | |
|---|---|
| **Insured:** High Tech Construction Inc | **Policy Number:** GL00000099708G |
| **Agent:** DACEY INSURANCE AGENCY INC | **Policy Period:** 12/01/2011 to 12/01/2012 RENEWAL |

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

☒ See Supplemental Schedule

### LIMITS OF INSURANCE:

| | | |
|---|---|---|
| $ | 2,000,000 | Each Occurrence Limit |
| $ | 100,000 | Damage to Premises Rented to You Limit |
| $ | 5,000 | Medical Expense Limit (Any One Person) |
| $ | 2,000,000 | Personal and Advertising Injury Limit (Any One Person or Organization) |
| $ | 2,000,000 | General Aggregate Limit (Other than Products-Completed Operations) |
| $ | 2,000,000 | Products/Completed Operations Aggregate Limit |

### FORM OF BUSINESS: CORPORATION

Business Description: General Contractor

Location of All Premises You Own, Rent or Occupy:     SEE SCHEDULE **GU-7005**

### AUDIT PERIOD, ANNUAL, UNLESS OTHERWISE STATED:

| Classifications | Code No. | Premium Basis | Rates | | Advance Premiums | |
|---|---|---|---|---|---|---|
| | | | Prem./ Ops. | Prod./ Comp.Ops | Prem./ Ops. | Prod./ Comp. Ops. |
| SEE SCHEDULE **CG-7275** | | | | | | |

| | | |
|---|---|---|
| **TOTAL PREMIUM FOR THIS COVERAGE PART:** | 7,014.00 | 5,608.00 |

**FORM(S) AND ENDORSEMENT(S) APPLICABLE TO THIS COVERAGE PART:**
SEE SCHEDULES **GU-7004** AND **GU-7009**

| | |
|---|---|
| 12/13/2011 | DACEY INSURANCE AGENCY INC |
| Countersignature Date | Authorized Representative |

**CG-7274 (Ed. 6-09)**

Page 1 of 1
Issued: 12/13/2011

GL00000099708G



**Harleysville**
*Good people to know*

Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

---

**Insured:** High Tech Construction Inc
**Agent:** DACEY INSURANCE AGENCY INC

**Policy Number:** GL00000099708G
**Policy Period:** 12/01/2011 to 12/01/2012
RENEWAL

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTARY SCHEDULE

| Classifications | Code No. | Premium Basis | Rates Prem./ Ops. | Rates Prod./ Comp. Ops. | Advance Premiums Prem./ Ops. | Advance Premiums Prod./ Comp. Ops. |
|---|---|---|---|---|---|---|
| PREM NO. 001 CARPENTRY-RESIDENTIAL PROPERTY | 91340 | 130,061 PAYROLL | 36.471 | 22.902 | 4,743 | 2,979 |
| PREM NO. 001 CARPENTRY-INTERIOR | 91341 | IF ANY PAYROLL | 44.833 | 12.332 | | |
| PREM NO. 001 CARPENTRY-NOC | 91342 | IF ANY PAYROLL | 50.436 | 17.657 | | |
| PREM NO. 001 CONTR-SUB-1/2 FAMILY DWELLING | 91583 | 352,610 TOTAL COST | 2.372 | 6.805 | 836 | 2,400 |
| PREM NO. 001 CONTR-SUB-REPAIR BLDG-NOC | 91585 | IF ANY TOTAL COST | 4.413 | 4.136 | | |
| PREM NO. 001 GRADING OF LAND | 95410 | 26,700 PAYROLL | 40.622 | 8.594 | 1,085 | 229 |
| GL ENHANCEMENT ENDORSEMENT | 91340 | IF ANY | | | 100 | |

CG-7275 (Ed. 6-09)

GL00000099708G



Harleysville
*Good people to know*

Harleysville Worcester Insurance Company
355 Maple Avenue
Harleysville, PA 19438-2297
www.harleysvillegroup.com

Insured: High Tech Construction Inc
Agent: DACEY INSURANCE AGENCY INC

Policy Number: GL00000099708G
Policy Period: 12/01/2011 to 12/01/2012
RENEWAL

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTARY SCHEDULE

| Classifications | Code No. | Premium Basis | Rates Prem./ Ops. | Prod./ Comp. Ops. | Advance Premiums Prem./ Ops. | Prod./ Comp. Ops. |
|---|---|---|---|---|---|---|
| PREM NO. 001 CG2010-ADDL INS-OWN/LESS/CONTR-SCHD PERS | | IF ANY | | | 200 | |
| PREM NO. 001 CG2011-ADDL INS-MANGR/LESSOR OF PREMISES | | IF ANY | | | 50 | |

CG-7275 (Ed. 6-09)

GL00000099708G

POLICY NUMBER:  GL00000099708G

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Town of South Kingstown<br>C/O Town Manage's Office | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**1.** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

**2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

GL00000099708G

POLICY NUMBER: GL00000099708G

**COMMERCIAL GENERAL LIABILITY**
**CG 20 11 01 96**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**1.** Designation of Premises (Part Leased to You): 888 Lonsdale Ave
Central Falls, RI 02863-1617

**2.** Name of Person or Organization (Additional Insured): Shark Sushi Bar & Grill
C/O Joe Dalomba

**3.** Additional Premium: $    50

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

GL00000099708G

POLICY NUMBER: GL00000099708G

IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

### SCHEDULE

Terrorism Premium (Certified Acts) $ 0
**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**
  Commercial General Liability Coverage Part

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

IL 09 85 01 08 © ISO Properties, Inc., 2007 Page 1 of 1

# EXHIBIT B

STATE OF RHODE ISLAND                                        SUPERIOR COURT
PROVIDENCE, SC.

| | |
|---|---|
| DAVID BASTIEN, in his capacity as<br>trustee of the RIATA REALTY<br>IRREVOCABLE TRUST, and GREGORY<br>MERCURIO, JR., in his capacity as trustee<br>of the GREG MERCURIO, Jr. 2010<br>REVOCABLE TRUST, and GREGORY<br>MERCURIO, JR.<br>            *Plaintiffs*,<br><br>vs.<br><br>HIGH TECH CONSTRUCTION OF RI,<br>INC., and THE BAILEY GROUP, LLC,<br>and BRIDGEVIEW CONSTRUCTION,<br>INC. and CLASSIC PLASTERING, LLC,<br>and FRANK VANACORE,<br>            *Defendants*. | C.A. No. |

## COMPLAINT

Plaintiffs, David Bastien, in his capacity as trustee of the Riata Realty Trust ("the Riata Trust"); Gregory Mercurio, Jr., in his capacity as trustee of the Greg Mercurio, Jr. 2010 Revocable Trust ("the Mercurio Trust"); and Greg Mercurio, Jr. ("Mercurio," or collectively with the Riata Trust and the Mercurio Trust, "Plaintiffs"), by and through their attorneys, submit this complaint ("Complaint") against Defendants, High Tech Construction of RI, Inc. ("High Tech"); the Bailey Group, LLC ("Bailey"); Classic Plastering, LLC ("Classic Plastering"); Frank Vanacore ("Vanacore"); and Bridgeview Construction, Inc. ("Bridgeview," collectively with High Tech, Bailey, Classic Plastering, and Vanacore, "Defendants").

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff David Bastien, in his capacity as trustee of the Riata Trust, is a Rhode Island citizen with an address of 381 Metro Center Boulevard, Warwick, RI 02886.

Case Number: PC-2017-001911-JWM-DDA Document 536 Filed 04/13/21 Page 28 of 85 PageID #4
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

455

2. Plaintiff Gregory Mercurio, Jr., in his capacity as trustee of the Mercurio Trust, is a Rhode Island citizen with an address of 20 Riata Drive, Lincoln, Rhode Island 02865.

3. Plaintiff Gregory Mercurio, Jr. is a Rhode Island citizen with an address of 20 Riata Drive, Lincoln, Rhode Island 02865.

4. Upon information and belief, High Tech is a Rhode Island corporation having its principal place of business at 888 Lonsdale Avenue, Central Falls, RI 02863.

5. Upon information and belief, Bailey is a Rhode Island limited liability company having its principal place of business at 63 Sockanosset Cross Roads, Suite 1A, Cranston, Rhode Island 02920.

6. Upon information and belief, Bridgeview is a Rhode Island corporation having its principal place of business at 7 Fifteenth Avenue, Warwick, Rhode Island 02886.

7. Upon information and belief, Classic Plastering is a fictitious Rhode Island corporation as it is not duly registered with the Rhode Island Secretary of State, and purportedly maintains a principal place of business at 160 Blade Street, Warwick, Rhode Island 02886.

8. Upon information and belief, Vanacore is an individual that conducts business as Classic Plastering and has an address of 160 Blade Street, Warwick, Rhode Island 02886.

9. The Court has personal jurisdiction over High Tech, Bailey, Classic Plastering, and Bridgeview inasmuch as High Tech, Bailey, Classic Plastering, and Bridgeview are Rhode Island companies.

10. The Court has personal jurisdiction over Vanacore as Vanacore is domiciled in Rhode Island.

11. The Court has subject matter jurisdiction over the instant matter.

12. The Providence County Superior Court is the proper venue inasmuch as the alleged facts and injuries sustained occurred in Lincoln, Rhode Island, which is a part of Providence County.

## FACTS

13. The Riata Trust and the Mercurio Trust are the owners of the real property and the house ("the House") thereon located at 20 Riata Drive, Lincoln, Rhode Island 02865 ("the Property").

14. In 2011, as a result of an unusually harsh winter, an ice dam formed at the edge of the House's slate roof and internal gutter system ("the Ice Dam"), which caused substantial water damage to the House's interior and exterior.

15. As a result of the damage caused by the Ice Dam, a casualty claim was filed with the Property's insurance provider ("the Insurance Claim").

Case Number PC-2017-0219
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

16. In connection with the Insurance Claim, Mercurio asked Bailey to inspect and evaluate the damage caused by the Ice Dam and estimate the cost of repairing such damage.

17. Bailey sent its agents to the Property, who inspected the House by obtaining core samples of the exterior stucco surface and its substrate as well as the exterior wooden green colored architectural panels. Bailey's agents determined that extensive interior and exterior repairs and renovations were necessary. Bailey provided a quote to the Riata Realty Trust for the cost of repairs to the exterior of the House ("Bailey Quote"), which included removing all external stucco and substrate cement board as well as all exterior wooden green colored architectural panels and plywood underlayment down to the sill plates and studs. The Bailey Quote further included the replacement of the external stucco with STOH brand stucco, the replacement of wooden green colored architectural panels with Omega Lite aluminum panels, and the replacement of all plywood underlayment of the entire house with new plywood.

18. The Bailey Quote was approximately $112,201.00, which included costs of all supplies and labor.

19. Solely based upon the Bailey inspection and quote to restore the exterior of House, and Bailey's assurances that it had qualified employees and subcontractors to supervise and complete such repairs, the Riata Trust entered into a claims settlement with it insurance provider ("the Settlement"). As part of the Settlement the Riata Trust received a payment from the insurance provider, which funds were to be used for all expenses associated with exterior and interior repairs, mold remediation, and alternative temporary housing while the House was under repair.

20. On or about June 28, 2012, the Riata Trust and Bailey executed a "AIA document A105-2007: Standard Form of Agreement Between Owner and Contractor for a Residential or Small Commercial Project" ("the Contract") relating to construction services ("the Project") at the Property, including "[e]xterior [r]enovations, EIFS and [m]etal [p]anels." Among other things, the Contract provided that Bailey would remove exterior EIFS and plywood, and would replace the plywood and EIFS and install new exterior metal panels ("the Metal Panels"). A true and accurate copy of the Contract is attached hereto as **Exhibit A** and is incorporated by reference.

21. As part of the Contract, the Riata Trust and Bailey agreed that Mercurio would purchase the materials associated with the Project as specified by Bailey, which costs were included in the Bailey Quote.

22. On or about July 5, 2012, Bailey contracted with High Tech to perform subcontracting services ("the Subcontract") relating to the Project. High Tech was retained by Bailey without notification to the Plaintiffs despite Bailey's representations that its employee carpenters who provided the Bailey Quote and damage assessment would be performing the work under the Contract.

Case Number: PC-2017-001911
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

## REMOVAL OF EXTERIOR EIFS, PLYWOOD, AND PANELING BY HIGH TECH

23. After executing the Subcontract, High Tech employees ("High Tech Employees"), under the supervision of Bailey, began stripping EIFS, plywood, and paneling from the exterior of the House ("the Exterior Repairs"), and in doing so, negligently caused extensive damage to the exterior and interior of the House, which breached the Contract.

24. To perform the Exterior Repairs and under the supervision of Bailey, High Tech Employees constructed staging around the House, which was negligently and improperly placed on two lawn sprinkler zone control boxes and aesthetic cement molding around exterior steel columns, causing extensive damage, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

25. As High Tech Employees were negligently and improperly removing EIFS from the chimneys of the House under the supervision of Bailey, EIFS and other material fell on the House's slate roof, flat rubber roof, and skylights, all of which were not adequately protected, causing extensive damage, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

26. As High Tech Employees were removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly cut the House's sill plate and the House's thermostat wires and radiant heat tubing, causing the House's HVAC system extensive damage, which breached the Contract. Further, under the supervision of Bailey, the High Tech Employees negligently and improperly removed portions of the sill plate, causing the house to drop approximately six inches, which caused extensive damage to the interior granite flooring, interior cabinets, and windows, which breached the Contract.

27. As High Tech Employees were removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly cut the House's wiring for the burglar alarm system, the smoke detectors, and wires leading to exterior landscape lighting and security gate, causing extensive damage, which breached the Contract.

28. As High Tech Employees were removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently cut and improperly disconnected the House's air conditioning units, causing extensive damage to the units themselves and to electrical connections and tubing connected to air handlers, which breached the Contract.

29. As High Tech Employees were removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly caused extensive damage to the two patio light towers, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

30. As High Tech Employees were negligently and improperly removing EIFS and plywood from the exterior of the House with sledge hammers under the supervision of Bailey, they knocked custom mirrors off the interior walls of the House, causing them and surrounding cabinetry extensive damage, which breached the Contract.

Case Number: PB-2011-002199-JJM-DDA
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

31. As High Tech Employees were negligently and improperly removing EIFS and plywood from the exterior of the House under the supervision of Bailey, caused extensive damage the outdoor water faucets, outdoor landscaping lights, and exterior wall lighting, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

32. As High Tech Employees were negligently and improperly removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly removed the metal caps on the House's chimneys, causing water to enter the House's fireplaces and cause extensive damage to the fireplaces and combustion chamber of boiler, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

33. As High Tech Employees were negligently and improperly removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly removed and disposed of the House's commercial kitchen exhaust fan, which breached the Contract. Plaintiffs were not aware of such disposal of the exhaust fan until so informed in May 2014.

34. As High Tech Employees were negligently and improperly removing EIFS and plywood from the exterior of the House under the supervision of Bailey, they negligently and improperly cut the House's flat rubber roofs and internal gutters, causing water to enter the House and cause extensive damage to the interior, including damaging the sheet rock, interior painting, interior decorations, window shades, and interior flooring, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

35. As High Tech Employees were conducting the Exterior Repairs under the supervision of Bailey, they negligently, repeatedly, and improperly drove a truck off the designated driveway, causing extensive damage to surrounding landscaping and the driveway's custom metal edging, which breached the Contract. Plaintiffs were not aware of such damage until so discovered in May 2014.

36. As High Tech Employees were conducting the Exterior Repairs under the supervision of Bailey, they negligently and improperly drove a truck into the House's garage door, causing it extensive damage, which breached the Contract.

37. As High Tech Employees were conducting the Exterior Repairs under the supervision of Bailey, when reattaching plywood, placed nails through drain pipes wires and internal gutters. Plaintiffs were not aware of such damage until so informed in May 2014.

38. As High Tech Employees were conducting the Exterior Repairs under the supervision of Bailey, they negligently and improperly removed metal flashing surrounding roof line and window flashing surrounding all windows, which caused extensive damage to the interior of the House, which Breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

Case Number: PC-2011-2119
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

39. As High Tech Employees were conducting the Exterior Repairs under the supervision of Bailey, they negligently and improperly failed to provide temporary coverage of house through the use of tarps or other such protective devices, causing additional water damage to inside of home, which breached the Contract. Plaintiffs were not aware of such damage until so informed in May 2014.

40. Upon information and belief, due to High Tech's repeated negligent conduct, Bailey fired High Tech and retained Bridgeview without notification to Plaintiffs.

## INSTALLATION OF EXTERIOR METAL PANELING

41. Despite Bailey's assurances to Plaintiffs that Bridgeview was a qualified installer of exterior metal paneling ("the Metal Panels"), Bridgeview, under the supervision of Bailey, negligently and improperly installed metal panels to the exterior of the House, resulting in a non-water tight exterior, which caused extensive damage to the exterior and interior of the House.

42. Bridgeview, under the supervision of Bailey, negligently and improperly installed the Metal Panels, and as a result, Mercurio was required to buy new metal panels ("the First Replacement Metal Panels"), and incur the expense of additional demolition and installation costs.

43. Bridgeview negligently and improperly caulked the caulk joints of the Metal Panels, which caused water to enter the Metal Panels, causing them extensive damage, which breached the Contract.

44. Plaintiffs requested that an agent of Laminators, Inc. ("Laminators")—the manufacturer of the Metal Panels—inspect the work by Bridgeview. Laminators sent the inventor of the Metal Panels, John Wright ("Mr. Wright"), at its expense to inspect the panel system as installed by Bridgeview under Bailey's supervision.  Mr. Wright found such installation by Bridgeview to be deficient and improper.  Plaintiffs did not know that Bridgeview negligently installed the First Replacement Metal Panels until so informed in May 2014.

45. Vanacore, under the auspices of Classic Plastering, negligently and improperly applied EIFS and other forms of stucco to the exterior of the House by not applying such EIFS and other stucco in a commercially reasonable manner, including but not limited to, improperly applying EIFS to the control joints between the EIFS and the First Replacement Metal Panels, which caused extensive damage to the exterior of the House and breached the Contract

46. As a result of Vanacore and Classic Plastering's negligently and improperly applied EIFS and other stucco, Plaintiffs were required to retain another EIFS and stucco contractor to fix certain areas of the exterior of the House.  Plaintiffs did not know that Vanacore and Classic Plastering negligently installed applied the EIFS and other stucco until so informed by the agents of Laminators and Mr. Wright.

Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

47. As a result of Bridgeview's negligent and improper installation of the First Replacement Metal Panels, Mercurio was required to buy a second set of replacement Metal Panels ("Second Replacement Metal Panels"), and incur additional demolition and installation costs, which were installed by a new contractor with the appropriate level of technical experience under the direction and supervision of Laminators and Mr. Wright.

## COUNT I
### BREACH OF CONTRACT
### (As to Bailey Only)

48. Plaintiffs incorporate as if realleged herein paragraphs 1 through 47.

49. The Contract was valid as it was between competent parties, involved a subject matter, and was supported by consideration, mutuality of agreement, and mutuality of obligation.

50. The terms of the contract were materially breached, including but not limited to, Plaintiffs paying in excess of the contract terms and Bailey's failure to adequately supervise the subcontractors that it retained.

51. Plaintiffs suffered damages, including but not limited to, paying more than the Contract's terms and paying for repairs of damage caused by High Tech, Bridgeview, Classic Plastering, and Vanacore while under the supervision of Bailey.

WHEREFORE, Plaintiffs prays that this Court:
   a. Enter judgment for Plaintiffs and against Defendants on all claims in an amount sufficient to compensate Plaintiffs for their damages;
   b. Awarded Plaintiffs reasonable attorney's fees and expenses of litigation;
   c. Award Plaintiffs their costs and expenses of this suit; and
   d. Award such other relief as shall appear proper and just.

## COUNT II
### NEGLIGENCE

52. Plaintiff incorporates as if realleged herein paragraphs 1 through 51.

53. Bailey had a duty to reasonably oversee, supervise, and manage the activities of the subcontractors that it retained.

54. Bailey breached such duty because it failed to reasonably qualify subcontractors with the expertise and technical skills necessary to perform the services for which they were contracted, as well as failing to reasonably supervise and manage High Tech, Bridgeview, Classic Plastering, Vanacore, and other subcontractors.

55. Bailey's breach of its duty to adequately supervise and manage the subcontractors it retained caused Plaintiff damages inasmuch as High Tech, Bridgeview, Classic Plastering, and Vanacore damaged the House.

Case Number: 1:20-cv-00219-JJM-LDA    Document 85-36    Filed 04/15/21    Page 34 of 35    PageID #420
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.

461

56. High Tech, Bridgeview, Classic Plastering, and Vanacore had a duty to act as reasonable commercial contractors in performing their duties under their contracts with Bailey.

57. High Tech, Bridgeview, Classic Plastering, and Vanacore breached their duties to act as reasonable commercial contractors in performing their duties under their contracts with Bailey when they engaged in acts that caused extensive damage to the House, including, but not limited to, removal of EIFS, plywood, and architectural wooden panels in a manner that was not reasonable, and the installation of Metal Panels not consistent with the manufacturer's instructions or commercial standards.

58. Such breach of High Tech, Classic Plastering, Vanacore, and Bridgeview's duties to act as reasonable commercial contractors caused Plaintiffs extensive damage inasmuch as Plaintiffs had to repair the damage caused by High Tech, Bridgeview, Classic Plastering, and Vanacore.

WHEREFORE, Plaintiffs prays that this Court:
   a. Enter judgment for Plaintiffs and against Defendants on all claims in an amount sufficient to compensate Plaintiffs for their damages,
   b. Awarded Plaintiffs reasonable attorney's fees and expenses of litigation;
   c. Award Plaintiffs their costs and expenses of this suit;
   d. Award punitive damages to Plaintiffs and against Defendants; and
   e. Award such other relief as shall appear proper and just.

**<u>PLAINTIFFS HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.</u>**

Case Number 18-18-cv-00219-JJM-DCA Document 85-36 Filed 03/15/21 Page 35 of 35 PageID #21
Filed in Providence/Bristol County Superior Court
Submitted: 4/21/2017 1:33:34 PM
Envelope: 1013488
Reviewer: Alexa G.
462

DAVID BASTIEN, in his capacity as
trustee of the RIATA REALTY
IRREVOCABLE TRUST, GREGORY
MERCURIO, in his capacity as trustee
of the GREGORY MERCURIO, JR.
2010 REVOCABLE TRUST, and
GREG MERCURIO, JR.

By their attorneys,

/s/ Girard R. Visconti
/s/ Christopher J. Fragomeni
Girard R. Visconti, Esq. (#0566)
Christopher J. Fragomeni, Esq. (#9476)
SHECHTMAN HALPERIN SAVAGE, LLP
1080 Main Street
Pawtucket, RI 02860
401-272-1400
401-272-1403
gvisconti@shslawfirm.com
cfragomeni@shslawfirm.com